[Crim. No. 20455. Feb. 15, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL L. WOODARD, Defendant and Appellant.

330

**Counsel**

Paul N. Halvonik, State Public Defender, Clifton R. Jeffers, Chief Assistant State Public Defender, Philip M. Brooks and Janet M. Lande, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BIRD, C. J.**—Appellant, Samuel L. Woodard, was convicted by a jury of second degree robbery. (Pen. Code, § 211.) This court must decide if a witness, other than a defendant, may be impeached at trial by felony convictions whose probative value may be outweighed by the risk of undue prejudice. (Evid. Code, § 352.)

I

On the evening of October 5, 1976, Florence Spencer, the owner of a cafe in North Richmond, was robbed. She testified that she went to her cafe between 10:30 p.m. and 11 p.m. to close it for the night and to collect the day's receipts. She parked her car in front of a building adjacent to the cafe. As she walked from her car to the cafe, she saw two men standing in front of a telephone booth located about 10 to 15 feet from the front door of the cafe. At trial, she identified the two men as James Johnson and appellant. Although she stated that she had known appellant and his family for many years, she referred to him throughout the trial as Samuel Whitaker.[1] She did not speak to either of the two men; nor did they speak to her. Although there were other people outside the cafe, she did not know who they were because she "wasn't paying any attention."

When she came out of the cafe with the day's receipts, someone grabbed her purse. She held on to the purse and, as a result, was pulled down and dragged about eight feet. The assailant fled with the purse. Before Spencer got up, she fired two shots at the assailant with a .38 caliber gun which she had in a paper bag. The assailant ran between the cafe and another building and disappeared.

The Contra Costa Sheriff's Department was called. While awaiting their arrival, Spencer followed the path the assailant had taken and discovered her purse and money in the alley behind the buildings. When

---

[1]There was no evidence that appellant had ever been known as Whitaker.

the officers arrived, she told them that appellant was the perpetrator of the robbery and that he was wearing a gold-brown shirt with brown flowers or dots. Later that evening she identified appellant's picture in a photographic line-up. She also made an in-court identification of appellant as her assailant.

Leonard Stockwell, a friend of Spencer's, testified that he had accompanied Spencer to the cafe that evening. He stated that his purpose in doing so was to see that she safely got in her car after collecting the money from the business. He testified that, as he was about to get in his car, he heard Spencer scream and saw her being robbed. He stated that the person who robbed Spencer had been standing in front of the telephone booth. Although Stockwell had been standing outside the cafe when Spencer came out, he was unable to identify appellant as the robber.

Marjorie and Stylin Woodard, appellant's parents, testified on his behalf that appellant had been home in North Richmond that evening. At 11:30 p.m. he left to go out for a sandwich at the Ace of Clubs in North Richmond. At the time, appellant was wearing a pair of faded blue jeans and a white tee-shirt. When appellant returned home about midnight, his parents noticed that he was limping. They asked him what had happened and he replied that he had heard shooting and, fearing that shots were being fired in his direction, jumped for cover behind a car.

Mr. Woodard testified that he examined appellant's injury, which was in the buttock area. Although he was familiar with gunshot wounds from his 21 years in the Army, he stated appellant's injury did not look like a gunshot wound. Nevertheless, he decided to take appellant to the hospital after his daughter informed them that Spencer claimed to have shot appellant.

Although appellant did not wish to see a doctor, his mother was adamant that he be examined. Appellant was driven to the hospital, where he was treated by Dr. Isaac Slaughter. Dr. Slaughter testified that he had treated hundreds of bullet wounds and that appellant's injury was not caused by a bullet. He stated that appellant's injuries consisted of a sharp-edge cut on the buttock and an abrasion on one of his elbows. The cut was described by the doctor as being an inch long and not deep. An X-ray of the area of the injury revealed no bullet or bullet fragments.

James Johnson was the last witness called and he testified for appellant under subpoena. He stated that he had been in the immediate area of the cafe but had not noticed Spencer arrive. However, he did see Spencer come out of the cafe while he was talking to a man and a woman near the cafe. He testified he had known appellant for about one year but "we don't run together or anything." Johnson saw the robbery and was certain that the perpetrator was not appellant.

Johnson further testified that he approached Spencer immediately after the incident, picked up her keys from the sidewalk and handed them to her. As he did so, Spencer asked: "Who is that, Jimmy?" Johnson replied he did not know. Spencer then stated: "Well, I know who he is."

Out of the presence of the jury, appellant's attorney moved to exclude evidence of Johnson's prior felony convictions for voluntary manslaughter (Pen. Code, § 192, subd. 1) in 1971 and for felon in possession of a concealable firearm (Pen. Code, § 12021) in 1975. The trial judge denied the motion, ruling that since the appellate courts had not held that this was "a matter of constitutional magnitude, then this trial court should obey the mandate of the legislature." He went on to state that he felt "our justice is getting further and further away from being even-handed and becoming a one-sided battle. . . . They foreclose the prosecution from finding out anything about the defense or the defense witnesses, whereas the defense has complete access as to what the prosecution is going to do. . . . Hopefully, someday they will equalize the battle." The prosecution then asked Johnson about his convictions in the presence of the jury.

During the nearly six hours of deliberations, the testimony of Spencer and Johnson was reread to the jurors at their request. Subsequently, the jury returned a guilty verdict of second degree robbery (former Pen. Code, § 211a). Appellant appeals from the judgment entered following this conviction.

II

In *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], this court unanimously held that although Evidence Code section 788[2] authorizes the admission of prior felony convictions to impeach the

---

[2]Evidence Code section 788 provides in pertinent part: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony. . . ."

All references hereinafter to statutes are to the Evidence Code unless otherwise indicated.

credibility of a witness, a trial court must, when requested, exercise its discretion under section 352[3] and exclude this evidence if the probative value of the prior convictions is outweighed by other factors, such as the risk of undue prejudice. (*People* v. *Beagle, supra,* 6 Cal.3d at pp. 452-453; *People* v. *Antick* (1975) 15 Cal.3d 79, 96-99 [123 Cal.Rptr. 475, 539 P.2d 43]; *People* v. *Rist* (1976) 16 Cal.3d 211, 218-219 [127 Cal.Rptr. 475, 545 P.2d 833]; *People* v. *Rollo* (1977) 20 Cal.3d 109, 115-116 [141 Cal.Rptr. 177, 569 P.2d 771].)

Some of "the more important factors that must be considered by trial courts . . ." in deciding whether to admit prior felony convictions to impeach a witness' credibility were enumerated in *People* v. *Beagle, supra,* 6 Cal.3d at page 453.     Since section 788 authorizes the use of such evidence only "[f]or the purpose of attacking the credibility of a witness," the first factor which the trial court must evaluate is whether the prior felony conviction reflects adversely upon credibility. Although the commission of any felony is sometimes said to reflect upon the *character* of the individual convicted, such a belief would not justify the use of every type of felony conviction to impeach *credibility.* "Character is only an abstract group-term; what actually exists is a number of virtually *separate traits, e.g.* honesty, violence, benevolence, etc." (Wigmore, Science of Judicial Proof (1937) p. 106; original italics.)

The Legislature has provided that the sole *trait* relevant to impeaching credibility is truthfulness: "Evidence of traits of his character other than honesty or veracity, or their opposites, is inadmissible to attack or support the credibility of a witness." (§ 786.) While a prior felony conviction may be probative of one or more "separate traits" of character, it may not involve the one trait—truthfulness—which is relevant to impeaching credibility. If a prior felony conviction does not involve the character trait of truthfulness, it must be excluded as irrelevant at the outset, since section 350 unequivocally provides that "[n]o evidence is admissible except relevant evidence."[4]

---

[3]Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[4]The dissent contends that the Legislature, by rejecting a 1965 proposal which would have limited impeachment to prior felony convictions involving dishonesty or false statement, evidenced its intent that all felony convictions must be deemed relevant to credibility. The dissent asserts that the *Beagle* court "arrogat[ed] [] legislative power" when it held that " ' "convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not." ' (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.)" (*Post,* at p. 344.)

However, the dissent overlooks that the Legislature has indicated its approval of this

Moreover, even felony convictions which are relevant to establish truthfulness are not equally probative of that issue. "No one denies that different felonies have different degrees of probative value on the issue of credibility. Some, such as perjury, are intimately connected with that issue; others, such as robbery and burglary, are somewhat less relevant; and ' "Acts of violence . . . generally have little or no direct bearing on honesty and veracity." ' " (*People* v. *Rollo, supra,* 20 Cal.3d at p. 118.) Therefore, if a court determines that a prior conviction involves truthfulness, it must consider the "degree of probative value" it has on that issue when ruling on a *Beagle* motion.

■ The second factor to be considered is the nearness or remoteness in time of the prior conviction. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) A conviction, " '[e]ven one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life,[5] should generally be excluded on the ground of remote-

court's holding in *Beagle*. In at least three of the four legislative sessions since *Beagle* was decided, amendments to section 788 have been proposed which were designed to overrule *Beagle* and its progeny. (Sen. Bill No. 845 (1972 Reg. Sess.) § 1; Assem. Bill No. 691 (1977-1978 Reg. Sess.) § 1.) Both houses of the Legislature have had an opportunity to act on such a bill, and, although each of the proposed amendments was considered at committee hearings, all of them failed to be enacted. (One died by operation of law in the Assembly after passage by the Senate; one was defeated by a Senate committee; and one was defeated by an Assembly committee.) (Final Cal. of Leg. Business (1972 Reg. Sess.) p. 266; Sen. Final Hist. (1973-1974 Reg. Sess.) p. 296; Assem. Semifinal Hist. (1977-1978 Reg. Sess.) p. 356.) Thus, the Legislature, after repeatedly scrutinizing *Beagle* et al., has indicated its approval of this court's line of decisions interpreting section 788.

The central thesis of this court's unanimous decision in *Beagle* was its finding that the Legislature did *not* intend to "exempt section 788 from the general evidentiary provisions [of Division 3 of the Evidence Code] applicable to all rules of admissibility." (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) In these "general evidentiary provisions" the Legislature has provided that only "relevant evidence" is admissible in a court proceeding. (§§ 300, 350.) While the term "relevant evidence" has been legislatively defined (§ 210), the judiciary has been given the authority to determine what proffered evidence fits that description. (See § 310.) Since "relevant evidence" includes evidence probative of the credibility of a witness (§ 210), this authority of the court clearly extends to determining whether proferred evidence has "any tendency in reason to prove or disprove" credibility (*ibid.*).

Thus, the dissent errs when it asserts that this authority of the court has been limited in the particular instance of prior felony convictions and that the court has no power to determine if a prior felony conviction is probative of credibility. Had the Legislature intended to carve out an exception to the general rules, it would have said so forthrightly. Moreover, it would not have consistently rejected attempts to overrule this court's holding that section 788 was not intended to be an exception to the "general evidentiary provisions" of the Evidence Code.

[5] In *People* v. *Antick, supra,* 15 Cal.3d at page 99, this court noted that the absence of "a 'legally blameless life' . . . , at most, enhance[s] only slightly the probative value of the evidence for impeachment purposes."

ness.' " (*Ibid.*) The "remoteness detracts significantly from the value of this evidence in impeaching . . . credibility." (*People v. Antick, supra,* 15 Cal.3d at p. 99.)

These two factors, which show the probative value of the prior conviction, must be weighed by the trial court to determine whether admission of this evidence "will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) Prior decisions have identified certain countervailing factors which are of particular importance in this balancing process when the witness is a criminal defendant. Among these factors are: (1) the "unique risk of undue prejudice and confusion of issues. Despite limiting instructions, the jury is likely to consider this evidence for the improper purpose of determining whether the accused is the type of person who would engage in criminal activity . . . ." (*People v. Antick, supra,* 15 Cal.3d at p. 97); and (2) the adverse effect on the administration of justice should the defendant elect not to testify in order to keep this information from the jury. (*People v. Beagle, supra,* 6 Cal.3d at p. 453.)

The Attorney General contends that the balancing process required by section 352 does not apply when the witness to be impeached is not the accused in a criminal case. He argues that *Beagle* and its progeny involved witnesses who were defendants in criminal cases and that no prejudice results when a witness other than a defendant is impeached by evidence of prior felony convictions.

It is correct that the *Beagle* line of cases from this court have involved witnesses who were also criminal defendants. However, the analysis underlying those decisions was premised on sections 352 and 788, which, when "read together . . . clearly provide discretion to the trial judge to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice." (*People v. Beagle, supra,* 6 Cal.3d at p. 453.) Neither of these statutes is limited in its application to criminal defendants. To the contrary, section 788 refers to a "witness" generally, and there is no mention of criminal defendants on the face of either statute or in the accompanying comments of the Law Revision Commission which proposed them. Moreover, when this court held in *Beagle* that section 788 did not require the automatic admission of every prior felony conviction, it did not rely on the type of witness to be impeached. This court reasoned that (1) section 788 contains the

permissive word "may" rather than the mandatory word "shall" in authorizing the admission of prior felony convictions to impeach credibility and (2) the discretion conferred on the trial court by section 352 to exclude evidence is a "general provision" of the Evidence Code, applicable to "evidence admissible under other provisions thereof." (*People* v. *Beagle, supra,* 6 Cal.3d at p. 452.) The class of witness to be impeached is irrelevant.

Although this court has identified considerations relating to prejudice which are especially significant in criminal actions where the witness is the defendant, nothing in these cases supports the argument that these special considerations are the *only* factors relating to prejudice or that these considerations are of no import when the witness to be impeached is not the accused in a criminal case. It may be true that a nonparty witness suffers no legally cognizable prejudice by impeachment with prior felony convictions and he may not refuse to testify on this ground. However, a *party* in a case, civil or criminal, may nevertheless be prejudiced by the admission of a nonparty witness' prior felony convictions. Where the resolution of a critical issue depends on whose testimony is to be believed, a jury may act arbitrarily and give little weight to the testimony of a witness whose character has been brought into question by the introduction of prior felony convictions. If the witness is called by a defendant in a criminal trial, a reasonable doubt may be resolved against the accused because he associates with felons, even though the prosecution has not proven beyond a reasonable doubt that the defendant committed the offense. This is especially true in alibi or mistaken identity situations where the only witness supporting the defense theory is a witness who has suffered prior felony convictions.

In addition, the possibility of prejudice may influence a party so that a witness, who might otherwise present relevant evidence, is not called. In such cases, the trier of fact would be deprived of probative, competent evidence in the same manner as it is when a criminal defendant elects not to testify due to prior felony convictions. This has an "adverse effect on the administration of justice," because it hinders the trier of fact in its ascertainment of the truth. (*People* v. *Rist, supra,* 16 Cal.3d at p. 222.) Therefore, in addition to the harm suffered by a party, the search for truth in our system of justice is impeded when prior felony convictions are improperly admitted to impeach the credibility of a nonparty witness.

■ Accordingly, the discretion called for by section 352 and by the *Beagle* line of decisions of this court must be exercised whenever a

party—plaintiff or defendant, in a civil or criminal case—moves for the exclusion of a witness' prior felony conviction. While the factors to be weighed may differ depending upon the nature of the case or the party who may be prejudiced, the weighing process is applicable to all cases.

This same conclusion was reached by the Court of Appeal in *People* v. *Carr* (1973) 32 Cal.App.3d 700 [108 Cal.Rptr. 216]. (See also *People* v. *Banks* (1976) 62 Cal.App.3d 38, 46-47 [132 Cal.Rptr. 751].) In *Carr,* the appellant alleged that he was entitled to impeach a prosecution witness with a prior conviction of murder. In upholding the propriety of the trial court's exclusion of the evidence, the *Carr* court stated: "It would be anomalous to hold that a trial judge has no discretion to exclude evidence that a witness, other than a defendant in a criminal action, was convicted of a felony even though the felony was, for example, an aggravated assault committed many years earlier when the witness was young and immature." (*People* v. *Carr, supra,* 32 Cal.App.3d at p. 704.)[6]

In the present case, it is clear that the trial court erred in admitting evidence of Johnson's prior felony convictions. No discretion was exercised by the trial court since it failed to base its ruling on the factors outlined in *Beagle.* The trial court considered neither the probative value of the convictions, nor the potential for prejudice. Rather, it relied on its apparent disagreement with the decisions of the appellate courts. This was improper under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]. Further, the trial judge denied the motion to exclude the prior convictions and based his decision on a ruling that section 788 mandated its use, although the law is to the

---

[6]The Attorney General argues that *Carr, supra,* 32 Cal.App.3d 700, is no longer good law because it was decided before *People* v. *Rist, supra,* 16 Cal.3d 211, in which this court, in footnote 10 at page 222, stated that "the views we now express pertain only to the introduction of prior felony convictions to impeach a witness who is the defendant in a criminal prosecution; we are not herein concerned with the use of prior convictions to impeach other witnesses in criminal or civil proceedings." The Attorney General ignores the fact that the paragraph thus footnoted was discussing one of the factors particularly pertinent to a defendant-witness: the adverse effect on the administration of justice should the defendant elect not to testify for fear of impeachment. Also ignored is the fact that *in the immediately preceding paragraph,* the court in *Rist* cited *Carr* with approval: "*Beagle* requires that the trial court, and the appellate court when a challenge is made to the trial court's exercise of discretion, consider *all* those pertinent factors bearing on the question whether the probative value of evidence of a prior conviction as it bears on credibility is outweighed by the risk of undue prejudice under the unique facts of the particular case. (See *People* v. *Antick, supra,* 15 Cal.3d 79, 97-99; *People* v. *Obie* (1974) 41 Cal.App.3d 744 [116 Cal.Rptr. 283] [disapproved on other grounds in *People* v. *Rollo, supra,* 20 Cal.3d 120]; *People* v. *Coleman* (1973) 32 Cal.App.3d 853 [108 Cal.Rptr. 573]; *People* v. *Carr* (1973) 32 Cal.App.3d 700.)" (*People* v. *Rist, supra,* 16 Cal.3d at pp. 221-222, original italics.)

contrary. None of the reasons advanced by the trial court justified the failure to exercise discretion. ▇ "[The trial court's] discretion is not absolute and must be carefully exercised where an individual's liberty is at stake." (*People* v. *Antick, supra,* 15 Cal.3d at p. 98.)

In this case neither of the convictions had any direct bearing on the credibility of the witness, and should have been excluded for that reason alone. (*Ante,* at p. 335.) The voluntary manslaughter conviction established the commission of a violent act, which may, at the most, have indicated a character trait for violence. Only this particular character trait—and not the whole of Johnson's character—was implicated. It cannot be inferred from the commission of a violent act that he was also disposed to falsify. "[A]s a matter of human nature, a bad general disposition does *not* necessarily or commonly involve a lack of veracity. . . ." (3A Wigmore, Evidence (Chadbourn rev. ed. 1970) § 922, p. 727, original italics.) Chief Justice Burger has observed that "[a]cts of violence . . . may result from a short temper, a combative nature, extreme provocation, or other causes, [and] generally have little or no direct bearing on honesty and veracity." (*Gordon* v. *United States* (D.C.Cir. 1967) 383 F.2d 936, 940; accord *People* v. *Beagle, supra,* 6 Cal.3d at p. 433; *People* v. *Rist, supra,* 16 Cal.3d at p. 222.) "The most heinous offenses in the Penal Code arsenal are those involving violence. Yet a propensity for violence, as suggested by a previous conviction of a violent act, does not reflect upon the only trait for which prior felony evidence is admissible: the credibility of a witness." (*People* v. *Rollo, supra,* 20 Cal.3d at p. 120, fn. 4.) Since the offense of voluntary manslaughter does not involve any element of fraud, deceit or dishonesty, evidence of the conviction should have been excluded.

The conviction for felon in possession of a concealable firearm should also have been excluded. There is nothing in the elements of this offense which involves a showing of dishonesty. The only elements that the prosecution must show in addition to the accused's *status* are his ownership or possession of an operable, concealable firearm (*People* v. *Jackson* (1968) 266 Cal.App.2d 341, 348-349 [72 Cal.Rptr. 162]) and his knowledge of its presence and character. There is *no* requirement that the accused possessed the firearm for an illegal purpose (*People* v. *Booker* (1978) 77 Cal.App.3d 223 [143 Cal.Rptr. 482]) or that he actually concealed it. It is only necessary to show that the weapon was "capable of being concealed upon the person." (Pen. Code, § 12021.) There is nothing inherently illegal in possessing or owning a concealable firearm. (Cf. *People* v. *King* (1978) 22 Cal.3d 12 [148 Cal.Rptr. 409, 582 P.2d

1000].) It is only the *status* of the owner which makes it a felony. Since this conviction had no direct bearing on the witness' truthfulness, under the rules of evidence, it should have been excluded.

█  Despite the trial court's erroneous rulings on the prior convictions, Johnson did testify and was impeached. Therefore, this court must determine whether under the circumstances of this particular case the error was prejudicial. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; compare *People* v. *Rist, supra,* 16 Cal.3d at p. 223 [where the witness to be impeached, the defendant, did *not* testify following the erroneous denial of his *Beagle* motion, the degree of prejudice could not be determined].) Several considerations compel the conclusion that it was.

Identity of the perpetrator was the central issue in appellant's trial. Johnson and Spencer, the victim, were the only witnesses to testify as to identity.[7] Therefore, Johnson's credibility was critical. Recognizing this, the prosecutor exploited the erroneously admitted prior convictions during final arguments to discredit Johnson as a witness. Initially, the prosecutor declared: "I submit to you Mr. Johnson no more cares about getting on the stand and telling the truth than the man in the moon. If you thought for a second—assume for a minute Mr. Woodard was or was not there, do you think that Mr. Johnson would get upon the stand and testify as to who committed the crime if he saw? Do you think he really would? Ladies and Gentlemen, Mr. Johnson is a unique human being." Later the prosecutor added: "But here he is, our great reliable witness Mr. Johnson, and his Honor will indicate how you can consider those felonies, voluntary manslaughter, ex-con in possession of a firearm bearing on his credibility." Even though there was no indication that Johnson had perjured himself,[8] the jury may have been persuaded that Johnson was such an unsavory character due to his prior convictions that his testimony should be disregarded.

The issue of guilt in this case was far from open and shut, as evidenced by the sharply conflicting evidence and the nearly six hours of deliberations by the jury before they reached a verdict. Clearly, the jury had misgivings about Spencer's identification of appellant as the culprit. The source of some of these misgivings is obvious even from the cold record

---

[7] Their testimony was also the only testimony that the jury requested be reread.

[8] The fact that Johnson's testimony contradicted Spencer's does not inevitably mean that one of the two committed perjury, for it is widely recognized that "innocent misrecollection is not [an] uncommon [experience]" and that "two persons witnessing an incident or a transaction often will see or hear it differently." (CALJIC No. 2.21.)

before this court. Spencer, whom the robber had approached from behind, believed appellant was the perpetrator. Johnson, who was standing near the scene and had a clear view of the incident, testified he was not.[9] Spencer repeatedly referred to appellant by the wrong name, "Whitaker." She was also unable to recall at trial the name of her friend Stockwell, whose "purpose [in] being there at closing time when she [Spencer] comes out" was to insure that she got into her car safely. Since the outcome of the trial was not a foregone conclusion, any doubt cast upon the identity of the assailant might have been resolved in favor of appellant if the jury had been given the opportunity to impartially weigh Johnson's testimony against that of Spencer. Therefore, "it is reasonably probable that a result more favorable to [appellant] would have been reached in the absence of [this] error." (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

## III

Prior to any decision to admit evidence of felony convictions to impeach the credibility of any witness, the trial courts must give careful consideration to whether or not the evidence will be used by the trier of fact only for the purpose which justifies its admission. "[T]he true purpose of a criminal trial, the ascertainment of the facts . . . ," (*People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1]) is not advanced by the indiscriminate use of felony convictions which do not bear on the truthfulness of the witness' testimony. The danger inherent in the use of such prior felony convictions is that the jurors may disregard a witness' testimony because they disapprove of his felony convictions. The proper administration of justice and the search for truth cannot be advanced if jurors make decisions based on facts that are irrelevant to the issue before them.

In the present case, the record indicates that the trial court failed to exercise its discretion in admitting evidence of prior felony convictions. Since those prior convictions did not bear on the trait of truthfulness, this court has no choice but to remand the cause to the trial court for such proceedings as are consistent with this opinion. Accordingly, the judgment is reversed.

Tobriner, J., Mosk, J., Manuel, J., and Newman, J., concurred.

Richardson, J., concurred in the judgment.

---

[9]Both Spencer and Johnson had known appellant before the robbery.

**CLARK, J.,** Dissenting.—The majority of this court once again usurp the role of the Legislature.

In California *all* felony convictions are deemed probative on the issue of credibility. (Evid. Code, § 788.)[1] In enacting section 788 the Legislature considered and rejected a proposal that would have changed California law by limiting impeachment to proof of a crime in which "an essential element" is "dishonesty or false statement." (Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1243, p. 1146.) Therefore, by holding that "a prior felony conviction . . . not involv[ing] the character trait of truthfulness . . . must be excluded as irrelevant" to credibility (*ante,* p. 335), the majority clearly nullify legislative intent.

Evidence Code section 788 is essentially a recodification of the law as it existed under Code of Civil Procedure section 2051. (Legis. Committee com. to Evid. Code, § 788.)[2] As the California Law Revision Commission pointed out, "under existing law any felony conviction may be used for impeachment purposes even though the crime involved has no bearing on the witness' honesty or veracity." (7 Cal. Law Revision Com. Rep. (1965) p. 143.)[3] The Law Revision Commission originally proposed to change the law by limiting impeachment to a prior felony conviction in which "[a]n essential element of the crime is dishonesty or false statement." (*Id.,* at pp. 141-143.) As originally introduced in the Assembly the legislation enacting the Evidence Code followed the recommendation of the Law Revision Commission in this respect. (Assem. Bill No. 333 (1965 Reg. Sess.) § 1.)[4] However, as Mr. Witkin points out, "Strong opposition,

---

[1]Section 788 provides in pertinent part: "For the purpose of attacking the credibility of a witness, it may be shown by examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ."

[2]Section 2051 provided: "A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony unless he has previously received a full and unconditional pardon, based upon a certificate of rehabilitation. (Enacted 1872, amended by Stats. 1949, ch. 333, § 1, p. 616, and repealed by Stats. 1965, ch. 299, § 126, p. 1366.)

[3]The commission's statement assumes, of course, some felony convictions do not reflect on one's "honesty or veracity"—a view, as will be seen, the Legislature ultimately rejected.

[4]Under this proposal Evidence Code section 788 would have provided in relevant part: "(a) Subject to subdivision (b), evidence of a witness' conviction of a felony is admissible for the purpose of attacking his credibility if the court, in proceedings held out of the presence and hearing of the jury, finds that: [¶] (1) An essential element of the crime is dishonesty or false statement . . . ."

arguing the difficulties of classifying crimes in this manner and the disadvantages of the separate hearing interrupting the trial, led to abandonment of this reform. (See *People* v. *Stewart* [(1966) 240 Cal.App.2d 1, 7, fns. 1 & 2 (50 Cal.Rptr. 26)].) Accordingly, Ev.C. 788 restates the rule of former C.C.P. 2051 . . . ." (Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1243, p. 1146.) That is, it did until this court convened itself as a super-legislature.

This particular arrogation of legislative power can be traced to *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. Having held the trial judge has discretion under Evidence Code section 352 to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by their risk of undue prejudice, this court proceeded to specify factors to be considered by the trial judge in exercising that discretion, quoting with approval the discussion of such factors in *Gordon* v. *United States* (D.C.Cir. 1967) 383 F.2d 936. " 'In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence . . . generally have little or no direct bearing on honesty and veracity. A "rule of thumb" thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not.' " (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.)

What this court appears to have overlooked in *Beagle* is, of course, that the federal court of appeals in *Gordon* was not bound by the California Evidence Code in fashioning a "rule of thumb" for the United States District Court for the District of Columbia. If a court is free to consult "common human experience," rather than being constrained to give effect to a statute with an unambiguous history, there may be some appeal in the view that "convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not."[5] However, as has been repeatedly stated herein, this is a view which our Legislature clearly rejected.

Having determined that James Johnson's prior felony convictions for voluntary manslaughter and for possession of a concealable firearm by an ex-felon—like all prior felony convictions—are probative on the issue of

---

[5]On the other hand, in this matter, as in most, human experience does not speak with one voice. It is just as consistent with human experience to assume that one who has disregarded society's most serious rules—felonies—will also disregard his obligation to tell the truth under oath. It is sufficient for our purposes that the Legislature has spoken on the issue.

his credibility, we proceed to consider the remaining factors in the *Beagle* balancing test. The priors being relatively recent, "remoteness" is no problem here; I do not understand the majority to claim that it is. The two factors identified in *Beagle* as bearing on prejudice are: (1) the possibility a defendant may not take the stand, thus depriving the jury of his side of the story, in order to avoid being impeached with prior convictions; and (2) the possibility a defendant impeached with a prior conviction similar to that for which he is on trial may be convicted by the jury on the unacceptable ground that if he did it before, he is more likely to have done it this time. (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) However, as the Court of Appeal pointed out: "Those factors have no application to a witness who is not a defendant. A nondefendant witness may not decline to testify for fear of impeachment, and the proof of a prior conviction cannot operate to incline the jury's mind toward convicting him again when he is not under charge."

The majority's response to this is remarkable. They argue that a defendant may, nevertheless, be prejudiced by impeachment of his witness with prior felony convictions because the jury may consider the priors in assessing the witness' credibility, and, realizing this, the defendant may decide not to call the witness. (*Ante,* p. 338.) It is, of course, quite true that a witness' prior felony convictions may tip the balance when the jury weighs his credibility. But what of that? The Legislature clearly intended that a witness with prior felony convictions, as well as a party who would call him, be "prejudiced" in this respect. As this court pointed out in *Beagle,* no witness is entitled to the "false aura of veracity" he would have if his prior felony convictions were to be suppressed. (6 Cal.3d at p. 453.) That a defendant may choose not to call a witness if the witness will be deprived of that false aura of veracity is no cause for concern unless this court now proposes to do what it disclaimed any intention of doing in *Beagle,* namely, "encourag[ing] or countenanc[ing] a form of blackmail by defendants." (*Id.*)

In conclusion, the trial court clearly acted properly in admitting evidence of Johnson's prior felony convictions for purposes of impeachment. There was no reason to exclude the priors. They were probative on the issue of Johnson's credibility, they were recent, and defendant would suffer no cognizable prejudice from their admission.

Accordingly, the judgment should be affirmed.