Filed 3/25/21  P. v. Neal CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SHARELL NEAL,<br><br>        Defendant and Appellant. | A159400<br><br>(San Francisco City and County<br>Super. Ct. No. SCN230953) |

A jury convicted appellant Sharell Neal of various crimes in connection with a fight with another woman over a man.  She challenges only her second-degree robbery conviction, for taking the victim's jewelry during the fight.  Neal argues on appeal that the trial court erred by (1) admitting evidence that property other than the jewelry also went missing from the crime scene and (2) disallowing Neal's testimony about the facts underlying a grand theft conviction used to impeach Neal.  We reject these arguments and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

On the afternoon of December 3, 2018, Neal and another woman were looking for a man with whom they were both involved and with whom Neal had a child.  The other woman parked her car near the water on Treasure

1

Island and got out to look for the man. When she was returning to her vehicle, she saw another car hit hers, and Neal and several other women got out. Neal smashed several windows in the other woman's car, and then she and her friends attacked the other woman after the other woman cut Neal's head with a knife. A bystander recorded part of the assault on his phone, and the recording was played for the jury.

The victim was wearing a necklace and rings when she was attacked. She testified that Neal said to the others at one point, "Get all this bitch's jewelry" and "I want that necklace," and that "[her] necklace was snatched from [her] neck." The victim further testified that her two rings were taken, at least one by Neal.

When the victim returned to her vehicle after the attack, she discovered that several of her other belongings were gone: her telephone, purse, wallet, social security card, and money. Neal was not charged with taking those items.

Neal was charged by information with one count of assault with a deadly weapon (a vehicle) (Pen. Code, § 245 subd. (a)(1));[1] one count of assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)), with an allegation of great bodily injury (§ 12022.7, subd. (a)); and one count of battery with serious bodily injury, with an allegation of infliction of great bodily injury (§§ 243, subd. (d), 1192.7, subd. (c)(8)). Neal also was charged with one count of second degree robbery with an allegation of great bodily injury (§§ 211, 12022.7, subd. (a)). The information specifically alleged that the robbery charge concerned the jewelry that Neal was alleged to have taken from the victim. During trial, the trial court granted a request to add a

---

[1] All statutory references are to the Penal Code unless otherwise specified.

misdemeanor count of vandalism (§ 594, subd. (a)) to conform to proof after testimony about Neal breaking the victim's car windows.

Neal testified in her own defense at trial and stated that at no point did she put her hand inside the victim's vehicle or take anything from the victim. Neal testified that she was defending herself during the incident and pushed the victim to the ground only after the victim spoke to her aggressively and then stabbed her in the head.

Toward the end of the jury's second day of deliberations, the trial court asked if the jury had reached any verdicts because the court knew it would have to excuse a juror who had a previously planned vacation that started the following day. The foreperson confirmed they had and provided the verdict forms already completed for four of the five counts against Neal. Jurors found Neal not guilty of assault with a deadly weapon as well as several lesser included offenses, and it also found her not guilty of battery with serious bodily injury. But they found her guilty of the lesser-included offense of misdemeanor battery and misdemeanor vandalism. Jurors further found Neal guilty of assault with force likely to cause great bodily injury but found not true the allegation that Neal personally inflicted great bodily injury. After the juror with the planned vacation was excused and replaced, the jury continued deliberations the following day. The same day the jury began deliberations again, after around six hours, jurors found Neal guilty of second degree robbery, but it found not true the allegation Neal personally inflicted great bodily injury on the victim.

The trial court suspended execution of a five-year prison sentence and sentenced Neal to four years of probation, with nine months in county jail.

## II.
### DISCUSSION

*A. The Trial Court Did Not Prejudicially Abuse Its Discretion by Admitting Evidence of the Missing Items that Were Not the Subject of the Robbery Charge.*

1.  Additional Background.

Neal moved pre-trial to exclude any reference to the alleged theft of the victim's purse, wallet, or ID card, because they were not the subject of the robbery charge. Defense counsel argued there was no evidence that Neal took any of those items and that admission of such evidence was "not appropriate [or] relevant" and would be "highly prejudicial." Counsel further argued that testimony about the other missing items might lead the jury to "just generally decide to convict Ms. Neal of robbery based on [the victim's] testimony that her purse, phone, wallet, ID card of that nature were missing after this incident, where she's not charged with that, and that would not be appropriate." The prosecutor responded that the jury should be permitted to hear "the entire story." The trial court denied Neal's request to exclude the evidence and stated that "I do think that there's relevance" and that the evidence was "not overly prejudicial."

At trial, the victim testified about her necklace being "snatched" from her neck after Neal said she wanted it and that Neal took a ring she (the victim) was wearing on her right middle finger. The prosecutor asked if the victim lost anything else, and she testified, "My belongings. My earrings were no longer in my ear when I got up. My belongings that were in my vehicle were gone. My telephone, my purse, my wallet, me and my son's social [security card], my money, everything was gone." At the end of the victim's testimony, the trial court permitted jurors to submit questions for

4

the victim. Jurors asked several questions, including whether the victim was able to locate her cell phone, purse, or jewelry, and the victim testified she was not.

Neal was asked on direct examination whether she ever saw the victim's purse, phone, "or any of those items," and Neal said she did not. On cross-examination, the prosecutor asked a series of questions about the victim's purse, and Neal insisted she had no knowledge of what happened to the purse, wallet, or other items. When the trial court permitted jurors to ask questions, they asked whether one of the women with Neal during the attack took the victim's purse. Neal testified, "If she [the other woman] did, I didn't see her take it. And the back seat, you can't see in the front on the floor, so I didn't see any purse in my car. So [I'm] not sure if she took it or not."

Jurors were instructed under CALCRIM No. 1600 that in order for them to convict Neal of robbery, the prosecution had to prove Neal took the victim's "property," with no specific reference to the taking of the victim's jewelry. The verdict form on the robbery count specified, however, that the property in question was the victim's jewelry.

During closing argument, the prosecutor referred to the other missing items when highlighting the evidence that Neal took the victim's jewelry. He argued, "Look at circumstantial . . . evidence [in] this case. When [the victim] arrived on Treasure Island from San Leandro, she had a necklace on her neck, she had rings on her hand. When she left in the ambulance, she didn't have any of those items. She testified that the defendant said 'I like that necklace,' and took it from her. She testified . . . that the rings were taken. She couldn't recall who took one ring, but she recalled the defendant took the other. You heard testimony from a police officer that saw her an hour prior

5

to the incident, and she had those items on her body.  When she walked back to her car, which is not used for the robbery, her purse was missing.  Just a fairy Godmother come and remove all these items out of nowhere?  There were four people that were present.  Defendant, two associates, and [the victim].  And [the victim] doesn't have her items. We know what happened to them.  Defendant, or her associates, took them. And as it relates to her necklace, she told you exactly who took it."  The prosecutor then played the video of the attack and argued it showed Neal taking the victim's jewelry.  Neal's counsel stressed in rebuttal that the prosecution had the burden of proving beyond a reasonable doubt that Neal took the victim's jewelry by force or fear and to not "be distracted by the stuff about the purse.  [Neal] is not charged with taking [the victim's] purse.  She's not charged with it.  She's charged with the forcible taking of [the victim's] jewelry."

As we have said, jurors reached verdicts on four of the five counts against Neal before the jury started deliberations again on the robbery count after the substitution of a juror who had vacation plans.  During their deliberations on the robbery count, jurors asked for and were provided with a readback of the redirect examination of the victim (when she was asked about stabbing Neal and other topics but was not asked about items taken during the charged encounter) as well as the brief testimony of a police officer called by the defense who interviewed the victim when she was in the hospital.  Later that day, the jury found Neal guilty of second-degree robbery but found not true the allegation that Neal inflicted great bodily injury.

2. Analysis.

Neal argues that the trial court abused its discretion when it permitted the victim to testify about evidence of items that went missing from her car but that Neal was not charged with taking.  (*People v. Foster* (2010)

6

50 Cal.4th 1301, 1328–1329 [rulings under Evid. Code, § 352 reviewed for abuse of discretion].) In doing so, she relies on cases analyzing the admission of "other crimes evidence," where the jury is permitted to hear about a defendant's separate crimes that are unrelated to the charged offenses. (E.g., *People v. Rogers* (2013) 57 Cal.4th 296, 325 [evidence of two previous murders in different states]; *People v. Ewoldt* (1994) 7 Cal.4th 380, 386 [evidence of prior, uncharged lewd act on complaining witness].)

We are sympathetic to Neal's relevance arguments. (Evid. Code, § 352 [court in its discretion may exclude evidence where its probative value outweighed by a substantial danger of undue prejudice].) Since the victim was not charged with taking the other items, the evidence was not directly relevant to the charged offense. At the same time, the evidence, while not directly relevant, related to the attack on the victim. Respondent contends that the trial evidence "was sufficient to permit the inference that the[] other items were taken during the assault by appellant's friends at her direction and such evidence was relevant to the jury's understanding of the extent of the robbery."

Ultimately, we need not decide whether the admission of the evidence was improper, because it was harmless. (*People v. Turner* (2020) 10 Cal. 5th 786, 824; *People v. Watson* (1956) 46 Cal.2d 818, 837.) Substantial evidence was presented that Neal took the victim's jewelry, and the evidence of other missing items was not so prejudicial so as to affect the outcome of the trial. Neal first contends that the determination of whether Neal took the victim's jewelry was mostly a credibility determination and evidence of the other missing items was used to bolster the victim's credibility, but we disagree. Jurors viewed a bystander video relied on by the prosecution to bolster its theory of the case, and they also heard testimony that the victim was not

wearing jewelry she had been seen with before the fight. Neal points to her acquittal on the charge that she committed assault with a deadly weapon as a sign that the prosecution relied on evidence of other stolen items to boost the victim's credibility on the robbery charge. To the contrary, the fact the jury acquitted Neal on some charges indicates that jurors evaluated witness credibility on all charges. And there were ample examples where Neal's credibility was undermined. Neal admitted that she lied to police when questioned about the incident by failing to disclose that she hit the victim's vehicle. She also admitted that she broke the windows of the victim's car. And the prosecutor impeached Neal using two prior convictions, discussed below.

We also disagree with Neal's characterization of the jury deliberations as revealing the jury "showed considerable difficulty with its verdict in general." True enough, jurors asked for a readback of two witnesses' testimonies when deliberating on the robbery charge. But those testimonies were related to actions the victim took during the attack, suggesting that jurors were focused on the allegation that Neal personally inflicted great bodily injury during the robbery, as opposed to whether she took items from the victim.

Neal contends that the length of jury deliberations on the robbery charge indicates a close case, but the cases upon which she relies are distinguishable because they involved factors other than the length of jury deliberations. (*People v. Cardenas* (1982) 31 Cal.3d 897, 907 [jury deliberated for 12 hours in case involving "several evidentiary errors"]; *People v. Rucker* (1980), 26 Cal.3d 368, 391 [jury deliberated for nine hours in case where improperly admitted statements relevant to "excellent" defense provided and statements "were most prejudicial"]; *People v. Woodard* (1979) 23 Cal.3d 329,

8

341 [issue of guilt "far from open and shut" as shown by nearly six hours of deliberations and "*sharply conflicting evidence*"], italics added.)

We reject Neal's prejudice arguments.

*B. The Trial Court Did Not Abuse Its Discretion by Excluding Facts Underlying Convictions Used to Impeach Neal.*

1. Additional Background.

The prosecution indicated before trial that if Neal elected to testify, it would seek to impeach her credibility with two prior felony convictions. The first, a 2011 perjury conviction, is not at issue in this appeal. The second was a 2015 conviction for felony grand theft (§ 487, subd. (a)) in connection with stealing from two grocery stores. Neal argued both that the trial court should exclude the convictions (an argument she does not renew on appeal) and that the court should sanitize the convictions. The court ruled that the prosecutor could use both convictions for impeachment purposes. As for the perjury conviction, the court ruled that it be "sanitized" so that it would be referred to only as "a felony conviction involving moral turpitude." And as for the felony grand theft conviction, the trial court declined to identify it only as a felony of moral turpitude because, it reasoned, "the phrase 'felony grand theft' is [not] so inherently prejudicial that it would require sanitizing it to be fair to the defense."

Relying on *People v. Dalton* (2019) 7 Cal.5th 166 (*Dalton*), Neal's attorney asked that she be allowed to provide more information regarding the grand theft conviction to minimize the risk the conviction would be used as "impermissible . . . propensity evidence." Counsel wanted to explain that the prior theft was of a store and thus was distinguishable from the current charged crimes that involved violence. She represented in a letter brief that the defense did "not intend to elicit a protracted version of the events"

underlying the conviction but that she was "permitted to mitigate the assault on her credibility by providing truthful evidence supported by the police reports regarding the nature of the offenses." The trial court ruled that it would not allow either side to provide facts behind either conviction. It stated that allowing such facts was "not the law" and that "it [could] confuse the jury" or "invite[] a response which requires more evidence and more witnesses."

On direct examination, Neal confirmed that she had been convicted in 2011 of felony for a crime involving moral turpitude, as well as in 2015 for felony grand theft. The prosecutor also asked about the convictions at the start of cross-examination. During his closing argument, the prosecutor stated, "We know that the defendant has a 2011 felony conviction involving moral turpitude. We know that she has a 2015 felony conviction for grand theft, both out of San Mateo County." The prosecutor emphasized the convictions again during rebuttal in discussing the credibility of the victim versus Neal, stating, "We have no reason to believe that [the victim] was not trying to tell . . . the truth as she saw it, that she was not trying to be honest with you. Defendant has a moral turpitude conviction. She has a conviction for violating Penal Code Section 487, Grand Theft. She admitted to you on the stand she was lying. Those are all things you can use to assess credibility."

Jurors were instructed under CALCRIM No. 316 that if they found a witness had been convicted of a felony, they "may consider that fact *only* in evaluating the credibility of the witness's testimony" and that they could not "use evidence of the defendant's felony convictions to conclude the defendant is a person of bad character, or that the defendant has a propensity to commit crimes." (Italics added.)

2. Analysis.

Neal argues that the trial court abused its discretion when it denied her request to offer testimony about her prior grand theft conviction to show the conviction was for nonviolent theft from two grocery stores. (*People v. Lightsey* (2012) 54 Cal.4th 668, 714 [trial court has broad power to control presentation of impeachment evidence].) We are not persuaded.

True enough, the Supreme Court recently held that "admission of relevant evidence of the circumstances underlying a felony conviction is no longer generally barred in criminal cases." (*Dalton*, *supra*, 7 Cal.5th at p. 213.) That is because under the "Truth-in-Evidence" amendment enacted by Proposition 8 in June 1982 (Cal. Const., art. I, § 28, subd. (f)(2)), "relevant evidence shall not be excluded in any criminal proceeding." (See *Dalton*, at p. 213.) In *Dalton*, the defense was permitted to impeach a witness with 12 California burglary convictions but was not allowed to provide the circumstances underlying those convictions to show the witness had a history of being manipulative and a conman. (*Id.* at pp. 210, 213.) The Supreme Court stressed that Proposition 8 includes no exception that would exclude evidence where it relates to a witness's conduct and is offered to attack *or support* the witness's credibility. (*Dalton*, at p. 214.) But the court also emphasized that trial courts retain discretion under Evidence Code section 352 to exclude evidence where its probative value is substantially outweighed by the probability its admission will require undue consumption of time, create substantial danger of undue prejudice, confuse the issues, or mislead the jury. (*Dalton*, at p. 214.) Although the trial court in *Dalton* may have been unaware it had discretion to admit circumstances underlying a previous conviction, the Supreme Court held that any error in limiting cross-examination was harmless because the additional evidence would not have

11

cast the witness's credibility in a "significantly different light." (*Id.* at pp. 213–215.)

Neal claims the trial court's stated concern was "unwarranted" that presenting more information about the conviction would require more evidence and additional witnesses (and thus necessitate undue consumption of time, Evid. Code, § 352, subd. (a)). We are not persuaded. Counsel apparently had information about the grand theft conviction from "the charging document for that offense" and "police reports." Counsel represents that additional evidence was needed "to show the jury that it was a crime of need rather than one of malice." But the prosecutor was not obligated to accept that characterization of the offense and may very well have offered additional evidence had Neal been allowed to testify as requested, even if the prosecutor did not say so when the trial court was denying Neal's request.

In any event, we agree with the trial court that there was a risk the evidence would confuse the jury. (Evid. Code, § 352, subd. (b).) As the jury was instructed, the conviction was to be used only for impeachment purposes and not as proof that Neal had a propensity to commit crimes. She now contends it was important that jurors have a clear understanding of what her conviction entailed. (E.g., *People v Kane* (1946) 27 Cal.2d 693, 698–699 [important to instruct on both robbery and grand theft when both crimes at issue because there is a "somewhat fine[] distinction" between the two].) But the only information the jury needed was that they could use the prior conviction for impeachment purposes, and having additional information about the facts underlying the case was not relevant to that determination.

Even if we were to assume that the trial court erred, any such error was harmless. Like the proposed testimony in *Dalton*, further information about Neal's prior conviction was not likely to cast Neal's credibility in a

12

"significantly different light." (*Dalton*, *supra*, 7 Cal.5th at p. 215.)  In arguing that she was prejudiced, Neal raises the same issues we already have rejected.

Finally, we reject Neal's argument that the alleged errors she identifies require reversal due to their cumulative prejudice.

III.

DISPOSITION

The order granting Neal probation is affirmed.

_____

Humes, P.J.

WE CONCUR:


_____

Margulies, J.


_____

Sanchez, J.

*People v. Neal*  A159400