[Crim. No. 20024. Aug. 30, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT SPEARMAN, Defendant and Appellant.

**COUNSEL**

Byron E. Countryman, under appointment by the Supreme Court, for Defendant and Appellant.

Paul Halvonik, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, and Jonathan B. Steiner, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., Alexander W. Kirkpatrick and Ann Rushton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BIRD, C.** ▮▮▮▮ This court must determine whether a person may be impeached with a prior conviction of possession of heroin for sale when he is being tried for that same offense.

I

Appellant, Albert Spearman, was arrested by Pasadena Police Officer Martin on April 22, 1975. A substance containing heroin was discovered in a hole in the rear bumper of a car appellant was driving. He was charged with possession of heroin for sale (Health & Saf. Code, § 11351), transportation of heroin (Health & Saf. Code, § 11352), and a prior conviction in 1973 of possession of heroin for sale.

At the trial, Officer Martin testified that both appellant and the car he was driving were searched at the time of the arrest. No contraband was found in the car's interior or trunk, or on appellant. The car was placed on a hoist in a local garage and several officers searched under it. Their attention was drawn to several holes in the rear bumper, in two of which Officer Martin found 2 United States Treasury checks, 7 Los Angeles County checks, and a cellophane balloon sack containing one packet with 13 grams of diluted heroin and another with 23 to 24 grams of a white powder resembling lactose. The officer concluded the heroin was possessed for sale. On cross-examination, he stated the car was parked on many occasions in front of the residence of a Larry Howard. He had twice seen Howard, a heroin user, riding in the car. On six occasions in 1973, he saw another heroin user, James Bluett, driving the car. Bluett in fact was the registered owner of the car, but was confined in jail when appellant was arrested. During a cursory examination of appellant, Officer Martin noticed no signs indicating appellant was under the influence of or had recently injected heroin.

United States Secret Service Agent Colley testified that appellant admitted placing the Treasury checks in the bumper after receiving them from a Larry Brooks. Colley said appellant stated that he "didn't want anything to do with them." Colley knew Brooks possessed many similar checks. Officer Martin verified in later testimony that Brooks was a heroin user.

Appellant called Pasadena Police Officer Prodonovich, who testified that he saw Bluett driving the car three to four months before appellant's arrest. Howard had driven the car a week or two before appellant's arrest, and according to the officer, it was frequently parked outside Howard's residence.

Outside the jury's presence, appellant admitted his 1973 conviction and moved to prevent its use for impeachment purposes. The trial judge denied the motion and as a result, appellant chose not to testify. Appellant stipulated to familiarity with and prior use of heroin.

A police chemist was called to testify. He stated the diluted heroin was 5 percent pure, the strength of heroin then being sold "on the street." The nature or weight of the white powder was not covered in the testimony.

After over five hours of deliberations, the jury convicted appellant of transporting heroin. The jury requested further instructions on the second charge and an hour and a half later, they returned a verdict of conviction for possession of heroin for sale.

## II

■ This court unanimously held in *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1] that although Evidence Code section 788[1] authorizes the use of a prior felony conviction to impeach the credibility of a witness, a trial court must, when requested, exercise its discretion as provided for by Evidence Code section 352[2] and exclude this impeachment evidence when the probative value of the prior conviction is outweighed by other considerations, such as the risk of undue prejudice. (Accord, *People* v. *Fries* (1979) 24 Cal.3d 222 [155 Cal.Rptr. 194, 594 P.2d 19]; *People* v. *Woodard* (1979) 23 Cal.3d 329, 334-335 [152 Cal.Rptr. 536, 590 P.2d 391]; *People* v. *Rollo* (1977) 20 Cal.3d 109, 115-116 [141 Cal.Rptr. 177, 569 P.2d 771]; *People* v. *Rist* (1976) 16 Cal.3d 211, 218-219 [127 Cal.Rptr. 457, 545 P.2d 833]; *People* v. *Antick* (1975) 15 Cal.3d 79, 97 [123 Cal.Rptr. 475, 539 P.2d 43].)

■ *Beagle* also enumerated several of "the more important factors that must be considered by trial courts . . ." in deciding whether to admit a prior felony conviction to impeach a witness' credibility. (6 Cal.3d at p. 453.) Since the purpose of the introduction of prior felony convictions is to impeach credibility, the first factor which the trial court must

---

[1] Evidence Code section 788 provides: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony unless:

"(a) A pardon based on his innocence has been granted to the witness by the jurisdiction in which he was convicted.

"(b) A certificate of rehabilitation and pardon has been granted to the witness under the provisions of Chapter 3.5 (commencing with Section 4852.01) of Title 6 of Part 3 of the Penal Code.

"(c) The accusatory pleading against the witness has been dismissed under the provisions of Penal Code Section 1203.4, but this exception does not apply to any criminal trial where the witness is being prosecuted for a subsequent offense.

"(d) The conviction was under the laws of another jurisdiction and the witness has been relieved of the penalties and disabilities arising from the conviction pursuant to a procedure substantially equivalent to that referred to in subdivision (b) or (c)." (Stats. 1965, ch. 299, § 788.)

[2] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

evaluate is whether the prior conviction reflects adversely on an individual's honesty or veracity; if it does, the degree of probative value of the conviction must be determined. (*People* v. *Woodard, supra,* 23 Cal.3d at pp. 335-336; see also *People* v. *Fries, supra,* 24 Cal.3d at p. 226.) Second, the trial court must consider the nearness or remoteness in time of the prior conviction. (*People* v. *Antick, supra,* 15 Cal.3d at p. 99; *People* v. *Beagle, supra,* 6 Cal.3d at p. 453.)

These two factors establish the probative value, if any, of the prior conviction, and must be weighed against the probability that their admission "will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) ▮ This court has previously identified several such counterbalancing considerations which are of particular importance in a criminal case when the witness to be impeached is the defendant: (1) the unique risk of undue prejudice and confusion of issues which occurs when the prior conviction is admitted to impeach the credibility of an accused who testifies, and (2) the adverse effect on the administration of justice when an accused elects not to take the stand in order to keep information about his prior felony conviction from the jury. (See *People* v. *Fries, supra,* 24 Cal.3d at p. 227.) ▮ Application of these now-settled principles to the case at bench compels the conclusion that the trial court's ruling was erroneous.

▮ The threshold question is whether a prior conviction for possession of heroin for sale is relevant to a determination of an accused's credibility. (Evid. Code, § 350; *People* v. *Woodard, supra,* 23 Cal.3d at pp. 335, 340-341.) Past decisions of this court have established that a prior conviction must involve dishonesty—i.e., it must have as a necessary element of the offense the intent to lie, defraud, deceive, steal, etc.—in order to reflect on a witness' credibility. For example, in *Woodard,* this court stated, "Since the offense of voluntary manslaughter does not involve any element of fraud, deceit, or dishonesty, evidence of th[at prior] conviction should have been excluded." (*Id.,* at p. 340.) *Woodard* also held "[t]he conviction for felon in possession of a concealable firearm should . . . have been excluded [because] nothing in the elements of this offense . . . involves a showing of dishonesty." (*Ibid.*)

The appropriate focus has always been on the *elements of the offense itself*: thus, in *Beagle,* this court found that issuing a check without sufficient funds (Pen. Code, § 476a) reflects on credibility, since a

necessary element of this offense is the "intent to defraud." (6 Cal.3d at p. 454.)[3] Similarly, in *People* v. *Fries, supra,* 24 Cal.3d at page 229, footnote 7, this court explained that "only some of the elements of robbery are relevant to impeachment; the others are irrelevant. Therefore, a prior conviction of robbery is only 'partly relevant to credibility.' " (Accord *People* v. *Rist, supra,* 16 Cal.3d at p. 220.) It is irrelevant that an offense may show a "disrespect for law" or a "character trait of willingness to do anything." (*People* v. *Rollo, supra,* 20 Cal.3d at p. 117, italics omitted.) Nor does the moral heinousness of an offense make it relevant on the issue of credibility. (*People* v. *Woodard, supra,* 23 Cal.3d at p. 340.) ▮▮ ▮ ▮▮▮ Only a conviction which has as a necessary element an intent to deceive, defraud, lie, steal, etc., impacts on the credibility of a witness.[4]

▮ Respondent virtually concedes that the offense defined by Health and Safety Code section 11351 does not fall within this category of convictions, since, in respondent's own words, a conviction for that offense "imparts neither a direct aspect of larceny nor an irrefutable showing of a mendacious character trait." Under the decisions discussed above, this concession is itself sufficient to find error in the ruling of the trial court below.

---

[3] See also *People* v. *Antick, supra,* 15 Cal.3d at page 99. The prior offense in question there, forgery (Pen. Code, § 470), satisfied the threshold inquiry because the statute itself requires the prosecution to prove the accused harbored the intent to defraud. Thus, the crime did " 'rest on dishonest conduct.' " (15 Cal.3d at p. 99.)

[4] The dissent claims that this standard is "open-ended," "vague," and "a meaningless catchall" because it includes the term "etc." (*Post,* at p. 121.) However, the term "etc." has a limited and well understood meaning in the English language. It refers to "*other things of like kind or purpose* as compared with those immediately theretofore mentioned." (Black's Law Dict. (rev. 4th ed., 1968) p. 652, italics added.) It is "generally used when a number of individuals of a class have been specified to indicate that *more of the same sort* might have been mentioned, but for shortness have been omitted . . . ." (Webster's New Twentieth Century Dict. (2d ed., 1974) p. 627, italics added.)

In this opinion, the term "etc." is used for accuracy and completeness. It indicates that the listing herein of prior convictions relevant to credibility is not all-inclusive. This does not mean that the listing is vague or open-ended, but rather that the nonenumerated prior convictions are "of like kind" or "of the same sort" as those just enumerated.

In another time or another style of writing, those prior convictions relevant for impeachment purposes might have been denoted by the Latin phrase "crimen falsi." (See, e.g., *United States* v. *Brashier* (9th Cir. 1976) 548 F.2d 1315, 1326-1327.) This phrase is "used as a general designation of a class of offenses, including all such as involve deceit or falsification, *e.g.,* forgery, counterfeiting, using false weights or measures, perjury, etc. Includes forgery, perjury, subordination of perjury, and offenses affecting the public administration of justice." (Black's Law Dict. *op. cit. supra,* p. 446.)

It is interesting to note that the distinguished editors of Black's Law Dictionary found it appropriate to use the term "etc." in defining "crimen falsi." Presumably, they did not consider their definition to be "meaningless."

Nevertheless, respondent urges that acts of theft and deception commonly occur in the heroin trade. He then attempts to substitute this "fact" for the offense itself. The defect in this approach is that, in order for the evidence of a prior conviction to be relevant, jurors would have to assume the commission of acts about which no evidence had been presented in court and about which no evidence could be presented for impeachment purposes. (Evid. Code, § 787.)

The case law is clear. The only relevant consideration is whether the prior conviction *itself* contains as a necessary element the intent to deceive, defraud, lie, cheat, steal, etc. In this case, it does not, as is conceded. Therefore, the trial court should have excluded it for purposes of impeachment. This was evidence that could only have been used "for the improper purpose of determining whether the accused is the type of person who would engage in criminal activity." (*People* v. *Antick, supra,* 15 Cal.3d at p. 97.) The prosecution may indeed have wanted the jury to believe that appellant's prior conviction, because it involved heroin, was morally reprehensible or showed a fundamental disrespect for the law and society. But these grounds do not make the evidence admissible for impeachment. Any other conclusion would represent an unwarranted departure from this court's past decisions.[5]

There is a second basis for concluding the trial court erred in ruling the prior conviction was admissible to impeach appellant. That prior conviction was identical to one of the offenses—and very similar in nature to the other offense—for which appellant was on trial. Recently, in *People* v. *Fries, supra,* 24 Cal.3d 222, this court held that it was error for a trial court to permit an accused to be impeached with a prior conviction of robbery at a subsequent trial where he was accused of a different robbery. The court reasoned that " '[a] jury which is made aware of a similar prior conviction will *inevitably* feel pressure to conclude that if the accused committed the prior crime he likely committed the crime charged.' " (*Id.,* at p. 230, quoting from *People* v. *Rist, supra,* 16 Cal.3d at p. 219.) *Fries* is indistinguishable from the present case. It compels the conclusion that the trial court's ruling below was erroneous.

[5]*People* v. *Hughes* (1975) 50 Cal.App.3d 749, 753 [123 Cal.Rptr. 767], relied on here by respondent, is disapproved insofar as it finds that prior convictions of sale of heroin (Health & Saf. Code, § 11352) bear on the accused's credibility. See Jefferson, California Evidence Benchbook (1978 supp.) section 22.2, page 249, criticizing *Hughes'* "complete lack of understanding" of the factors used in determining whether a prior felony conviction is relevant to credibility. Compare the analysis advanced in *People* v. *Coleman* (1979) 89 Cal.App.3d 312, 318-320 [152 Cal.Rptr. 407].

## III

The dissent would affirm the conviction on the basis that, in its view, the prior conviction was probative of credibility. Examination of the reasoning of the dissent reveals its serious flaws.

The dissent appears to measure the probative value of a witness' prior conviction by whether the conviction shows that the "individual . . . has freely chosen to reject the responsibility of laws" or that he lacks "respect . . . for his civic responsibilities outside the courtroom . . . ." (*Post,* at pp. 120-121.) The commission of any felony might be said to reflect on words of the dissent itself. ■ Surely, a conviction for a violent felony suggests a lack of respect for one's civic responsibilities, yet the dissent must "readily agree that the commission of . . . assaultive behavior per se . . . generally do[es] not reflect on the actor's honesty and, accordingly, convictions thereof do not speak of the felon's 'credibility.' " (*Post,* at pp. 120, 121.) The commission of any felony might be said to reflect on one's respect for his responsibilities, but it does not follow that it necessarily reflects upon "the only trait for which prior felony evidence is admissible; the credibility of the witness." (*People* v. *Rollo, supra,* 20 Cal.3d at p. 120, fn. 4.)[6]

In the end, the dissent concludes that a prior conviction for possession for sale of heroin is probative of present credibility because it "seems self-evident" and because this conviction "inherently" speaks to credibility. (*Post,* at pp. 121, 122.) This is not the "definitional precision" which the dissent elsewhere suggests is appropriate in this area. (*Post,* at p. 121.) In any event, this subjective form of analysis by the dissent is contrary to the analysis this court used recently in *People* v. *Woodard, supra,* 23 Cal.3d 329. In *Woodard,* this court determined the probative value of prior convictions by referring to the elements of these crimes. (*Id.,* at pp. 340-341.) The dissent neither mentions *Woodard* nor points to the elements of the prior convictions involved here which disclose an intent to deceive, defraud, lie, or steal.[7] Apparently, the dissent would conclude

---

[6]The dissent elsewhere urges that a prior conviction for possession for sale of heroin can be considered probative of a witness' present tendency to tell the truth, on the basis that "[o]ne could . . . assert that the possessor of heroin for sale 'steals' the health, or sanity, or liberty of the victim." (*Post,* at p. 121.)

Again, however, the same statement could be made concerning those who commit violent crimes or crimes against the public peace.

[7]The dissent does state at several points that a conviction for possession for sale of heroin involves an "intent to sell it for pecuniary gain or commercial profit." (*Post,* at p. 122; see also, *post,* at p. 122.) This is incorrect, as, for example, an individual may be

as to the prior conviction at issue in this case, that the whole is somehow greater than the sum of its parts.

IV

■    Finally, this court must decide whether the trial court's improper ruling constituted reversible error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].) After consideration of the evidence and the state of the record in this case, it cannot be concluded the error was harmless.

At the outset, it is recognized that the evidence presented at trial appeared, on paper, to have made out a strong, albeit circumstantial case against appellant. However, that evidence was not, even on a cold transcript, irrebuttable.

More significantly, because of the trial court's erroneous ruling, appellant did not testify and thus was prevented from presenting any defense to the charges. (See also *People* v. *Fries, supra,* 24 Cal.3d at pp. 228-229.) Unquestionably, appellant might have presented exculpatory testimony. He might, for example, have testified he was not aware of the presence of the heroin in the bumper or did not exercise dominion and control over it. He might well have explained that Bluett's car was routinely and recently used by other acquaintances of Bluett, including addicts such as Howard who may themselves have stored heroin in the bumper without the knowledge of appellant. Alternatively, appellant might have admitted possession of the heroin for personal use but denied any intent to sell. Such testimony, if true, would warrant a conviction for a lesser offense than possession for sale.

■    Whether the jury would have believed such testimony calls for speculation beyond the powers of this appellate court. "The appellate court is limited to the mute record below. Many factors may affect the probative value of testimony, such as age, sex, intelligence, experience, occupation, demeanor, or temperament of the witness. A trial court or jury before whom witnesses appear is at least in a position to take note of such factors. An appellate court has no way of doing so. It cannot know whether a witness answered some questions forthrightly but evaded others. It may find an answer convincing and truthful in written form that may have sounded unreliable at the time it was given. A well-phrased sentence in the record may have seemed rehearsed at the trial. A clumsy

---

convicted of the offense on the basis of aiding and abetting principles, without expecting or receiving any money for those efforts.

sentence in the record may not convey the ring of truth that attended it when the witness groped his way to its articulation." (Traynor, The Riddle of Harmless Error (1970) pp. 20-21; see also, *People* v. *Fries, supra,* 24 Cal.3d at p. 228.) For this court to reject the possibility that the jury might have believed appellant would involve not only a high degree of presumption, but also, in certain respects, an invasion of the province of the jury. By refusing to indulge in speculation, this court preserves the right of every accused person to present his version of the case to the jury.[8]

■■■ This court, therefore, has no basis for concluding that appellant's testimony would not have affected the result of the trial. "[E]rrors at a trial that deprive a litigant of the opportunity to present his version of the case . . . are . . . ordinarily reversible, since there is no way of evaluating whether or not they affected the judgment." (Traynor, *op. cit. supra,* at p. 68.) A conviction under such circumstances is a "miscarriage of justice" within the meaning of article VI, section 13 of the California Constitution. (See *People* v. *Watson, supra,* 46 Cal.2d at p. 837; *People* v. *Gainer* (1977) 19 Cal.3d 835, 855 [139 Cal.Rptr. 861, 566 P.2d 997]; *People* v. *Fries, supra,* 24 Cal.3d at pp. 233-234.)

The judgment is reversed.

Tobriner, J., Mosk, J., Manuel, J., and Newman, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. For the reasons stated in my dissenting opinion in *People* v. *Fries* (1979) 24 Cal.3d 222 at page 234 [155 Cal.Rptr. 194, 594 P.2d 19], I disagree with the majority's conclusion that a defendant's credibility may no longer be impeached by admission of a prior conviction of an offense identical or similar to the offense charged.

My principal objection to the majority opinion, however, is that it holds that a defendant's previous conviction of possession of heroin for sale does not affect his credibility as a witness. I think that it does.

Section 788 of the Evidence Code (unless otherwise indicated, all statutory references are to that code) provides that for the purpose of

---

[8]This court notes the additional possibility that appellant, had he testified, might have denied that he admitted receiving checks from Brooks and placing them in the car bumper. He might have denied knowing the holes were in the bumper. Whether such testimony would have been found credible by the trier of fact involves speculation beyond the powers of an appellate court.

attacking credibility it may be shown that the witness has been convicted of a felony. In *People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [492 P.2d 1], we said that a trial court must exercise its discretion in accordance with the guidelines expressed in section 352 wherein probative value is measured against prejudice. In four successive cases, *Fries, supra,* 24 Cal.3d 222 [155 Cal.Rptr. 194, 594 P.2d 19], *People* v. *Rollo* (1977) 20 Cal.3d 109 [141 Cal.Rptr. 177, 569 P.2d 771], *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833], and *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43], the majority has steadily and unnecessarily circumscribed the application of section 788 to the point where little remains of a clear legislative expression. The majority carefully adheres to a portion of our *Beagle* holding while studiously omitting several other equally important *Beagle* principles. For example, we stated in that case that "We do not purport to establish rigid standards to govern that which in each instance must depend upon the *sound exercise of judicial discretion.*" (P. 453.) Furthermore, we stressed that "No witness including a defendant who elects to testify in his own behalf is entitled to a *false aura of veracity.* The *general rule* is that felony convictions bearing on veracity are admissible." (*Ibid.*, italics added.)

Having just recently decided in *People* v. *Fries, supra,* 24 Cal.3d 222, that the commission of a *robbery* bears only *partially* on a witness' credibility, the majority now excludes a prior conviction for possession of heroin for sale because it fails to disclose "an intent to deceive, defraud, lie, steal, etc., [which] impacts on the credibility of a witness" (*ante,* p. 115). I think the majority is dead wrong.

What is meant by the term "credibility" as it is used in section 788, and as we have expressed it in *Beagle* and succeeding cases? Webster's Third New International Dictionary (1961) page 532, defines "credibility" as "the quality or power of inspiring belief . . .; worthiness of belief . . .; capacity for belief . . . ." In similar fashion the term "credible" is defined as "capable of being credited or believed : worthy of belief . . . : entitled to confidence : trustworthy . . . : credulous : creditable, reputable." (*Ibid.*) Under section 786 the honesty or veracity of a witness or the lack thereof is admissible on the issue of credibility.

The essential inquiry here is whether the witness is honest and capable of being believed. Any conduct which reflects adversely on a person's honesty affects his "credibility" within the statutory use of the term. I readily agree that the commission of certain kinds of crimes, such as assaultive behavior per se, or crimes against the public peace, generally

do not reflect on the actor's honesty and, accordingly, convictions thereof do not speak of the felon's "credibility." The majority errs, however, when it attempts to catalogue by class those kinds of offenses which do reflect on credibility. The danger in such an attempt is that some kinds of offenses will be omitted. Thus, when the majority insists that our case law now demonstrates that "The only relevant consideration is whether the prior conviction *itself* contains as a necessary element the intent to deceive, defraud, lie, cheat, steal . . ." (*ante,* p. 116) the majority must necessarily tack on to the list the term "etc." (et cetera). This leaves the majority's standard entirely open-ended. The enigmatic "etc." is conveniently fuzzy and pleasantly vague. In an area requiring definitional precision it is a meaningless catchall. If, however, we interpret the term "etc." to include "any felony which reflects adversely on the witness' honesty," the result is reasonable. This is what we meant in *Beagle* when we said "convictions which rest on dishonest conduct relate to credibility . . . ." (6 Cal.3d at p. 453.) This common sense construction saves the principle from the ethical and conceptual dead end rapidly approached by the majority, in which it finds, on the one hand, that issuing a check without sufficient funds (*Beagle*) reflects adversely on credibility and is therefore impeaching, whereas, on the other hand, possession of heroin for sale (or, presumably, the sale of heroin) does not reflect adversely on credibility and is not impeaching. The majority has seized on *Beagle* language which had quoted, *as illustrative only,* the "deceit, fraud, cheating, or stealing" expression from *Gordon* v. *United States* (1967) 383 F.2d 936, 940-941 [127 U.S.App.D.C. 343].

One could readily argue that the crime of possession of heroin for sale necessarily is loaded with deception, the first alternative ingredient described by the majority. One could also assert that the possessor of heroin for sale "steals" the health, or sanity, or liberty of the victim. But the majority's principal error is in its increasingly and excessively narrow definition of impeaching crimes. In applying an "et cetera" standard to determine whether the prior conviction bears on credibility the majority employs an 18-inch yardstick. The measuring test which it uses is incomplete and inadequate.

The offense of possession of heroin for sale involves four elements: (1) Actual or constructive possession of the narcotic, (2) for the purpose of sale with knowledge, (3) of its presence, and (4) of its narcotic character. (*People* v. *Newman* (1971) 5 Cal.3d 48, 52-53 [95 Cal.Rptr. 12, 484 P.2d 1356]; *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412, 421 [112 Cal.Rptr. 485].) The felony, therefore, involves the knowing possession of

a very dangerous and unlawful drug with the intent to sell it for pecuniary gain or commercial profit and with full knowledge of its narcotic and addictive nature. It seems self-evident that one who possesses heroin intending illegally to sell it to another, when the tragic consequences of heroin use are so fully known and documented, may fairly and properly be deemed a "dishonest" person. In addition to several other things, such a person may reasonably be deemed "unworthy of belief," "untrustworthy," and not "entitled to confidence."

When a witness, whether defendant or otherwise, in court during trial, raises his hand and swears or affirms " 'that the evidence you shall give . . . shall be the truth, the whole truth, and nothing but the truth, so help you God' " (Code Civ. Proc., § 2094), the witness thereby assumes both a moral and legal obligation. A jury, if it was permitted to learn, might reasonably question the honesty or veracity and therefore the credibility of those who deliberately and knowingly shun the common standards of decent and legal behavior by choosing to profit from the sale of heroin. A jury could reasonably ask itself, will an individual who has freely chosen to reject the responsibility of laws in this manner also choose to reject the responsibility of an oath? A jury often has a difficult task of measuring what weight it should give to the individual witnesses who give testimony, frequently conflicting. Information about a witness' respect, or the lack thereof, for his civic responsibilities outside the courtroom, as demonstrated by a criminal conviction of this type, may aid a jury in determining how seriously the witness is taking his responsibilities under his oath inside the courtroom. This information, properly, may assist a jury in deciding what weight should be accorded his testimony. Certain kinds of crimes are inherently, and by their very nature, ones which speak eloquently of the credibility of those committing them. Possession for sale of heroin is one of them.

I cannot join the majority in concealing from a jury, in its difficult search for the truth, information which bears directly upon, and so closely affects, the credibility of the witness. To deprive the jury of this knowledge is to permit the witness to assume that "false aura of veracity" which we expressly deplored in *Beagle*.

In a nutshell, the majority has concluded that it is possible to be an honest, trustworthy, heroin pusher. There is no such person, for the terms are wholly incompatible and irreconcilable. This was the precise conclusion reached in *People* v. *Hughes* (1975) 50 Cal.App.3d 749, 753 [123 Cal.Rptr. 747], a recent case in which we denied a hearing but which the

majority very unfortunately now rejects. In speaking for a unanimous court in *Hughes,* Justice Caldecott in my opinion was precisely on target when he concluded, "we cannot say that a person who steals is more likely to lie than a seller of heroin. Certainly, the seller of heroin is as lacking in integrity as is the thief." The very same may be said of the possessor of heroin for sale.

Defendant's conviction should be affirmed.

Clark, J., concurred.