[Crim. No. 20578. First Dist., Div. Two. May 4, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE W. THOMAS, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Robert P. Mason and Mark Fogelman, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Clifford K. Thompson, Jr., and Morris Lenk, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**MILLER, J.**—George W. Thomas appeals from a judgment of conviction[1] based on a jury finding him guilty of burglary, two counts of robbery, rape and assault with a deadly weapon. (Pen. Code, §§ 459, 211, 261 and 245, subd. (a).)

After a trial held in October 1977, in which the jury was unable to reach a verdict and a mistrial was declared, a retrial commenced on September 11, 1979. Appellant moved to exclude prior convictions for burglary and robbery. The court ordered that the burglary conviction be stricken but that evidence of the robbery conviction could be used for impeachment purposes during trial.

Evidence produced at trial revealed that on May 24, 1977, between 10 and 10:30 a.m., Charlotte Root took her dog for a walk. Upon her return to her home, appellant pushed her through the door of her house. Appellant, who was armed with a knife, told Mrs. Root and her invalid husband that he wanted money. Mr. and Mrs. Root gave appellant their money and Mr. Root gave him his wristwatch.

Appellant then stated that he wanted more money and Mrs. Root informed him that there was more upstairs. Appellant followed Mrs. Root upstairs and after she gave him more money he asked for more things. Thereafter, appellant went from room to room with Mrs. Root removing various items which were placed in a bag provided by Mrs. Root. When arriving at Mrs. Root's son's room, appellant held his knife at her neck. Appellant went through the son's desk, then turned and told Mrs. Root to get down on the bed. Appellant proceeded to rape her. He next took her watch and the bag and left the house.

The police were called and Mrs. Root gave them a description of appellant including the clothing he was wearing. The police then took Mrs. Root to Central Emergency Hospital where tests revealed evidence of the rape.

In the process of making their investigation, a police check of recently pawned items showed that one Otis Harris had pawned an Ome-

---

[1]Although appellant's notice of appeal purports to appeal from the sentence only, section 1237 of the Penal Code provides that a sentence shall be deemed to be a final judgment for the purposes of an appeal.

ga watch. Mrs. Root identified the watch as her own. A questioning of Otis Harris led the police to John George. John George, in turn, informed the police that certain items including two watches were brought to his house by somebody named "George."

John George testified that during the latter part of May 1977, appellant stayed at George's residence. On May 24, George saw appellant early in the morning. Appellant left the residence and returned at approximately 10:30 a.m. carrying a bag with numerous items including a man's and a woman's watch. In return for George's hospitality in allowing him to stay in the apartment, appellant gave George the watches which George then pawned through Otis Harris and Michael Jarvis at two local pawnshops. John George admitted that he had been convicted of two armed robberies, one in 1964 and another in 1971.

Appellant did not testify at trial.

■ We agree with appellant's principal contention that the trial court committed reversible error by ruling to allow appellant to be impeached by an identical prior should he testify.

In *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], our Supreme Court held that although section 788 of the Evidence Code[2] authorizes the use of a prior felony conviction to impeach the credibility of a witness, a trial court must, when requested, exercise its discretion under section 352 of the Evidence Code[3] and exclude this evidence if the probative value of the prior conviction is outweighed by other considerations, such as the risk of undue prejudice. (*People* v. *Spearman* (1979) 25 Cal.3d 107, 113 [157 Cal.Rptr. 883, 599 P.2d 74]; *People* v. *Fries* (1979) 24 Cal.3d 222, 226 [155 Cal.Rptr. 194, 594 P.2d 19]; *People* v. *Woodard* (1979) 23 Cal.3d 329, 334-335 [152 Cal.Rptr. 536, 590 P.2d 391]; *People* v. *Rollo* (1977) 20 Cal.3d 109, 115-116 [141 Cal.Rptr. 177, 569 P.2d 771]; *People* v. *Rist* (1976) 16 Cal.3d 211, 218-219 [127 Cal.Rptr. 457, 545 P.2d 833]; *People* v. *Antick* (1975) 15 Cal.3d 79, 97 [123 Cal.Rptr. 475, 539 P.2d 43].)

---

[2]Section 788 of the Evidence Code provides in pertinent part: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony ...."

[3]Section 352 of the Evidence Code provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The *Beagle* court articulated the special problem which arises when the prior conviction is for the same or substantially similar conduct for which the accused is on trial. It indicated that strong reasons arise for excluding convictions for the same crime because of the inevitable pressure on lay jurors to believe that if a defendant committed an identical crime in the past he probably committed it in the present case. The court concluded that "'those convictions which are for the same crime should be admitted sparingly.'" (*People* v. *Beagle, supra*, 6 Cal.3d at p. 453.)

Trial courts may exclude evidence of prior felony convictions offered to impeach a witness upon balancing the following four factors: 1) whether the prior convictions reflect adversely on the defendant's honesty or veracity; 2) whether the prior felony conviction is near or remote in time; 3) whether the prior felony conviction is for substantially similar conduct for which the accused is on trial; and 4) the effect if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. (*People* v. *Beagle, supra*, 6 Cal.3d at p. 453; *People* v. *Lassell* (1980) 108 Cal.App.3d 720, 724 [166 Cal. Rptr. 678].) In effect, the court must weigh the "probative value" of the first two factors against the probability that admission of such evidence will result in undue prejudice to the defendant. (*People* v. *Fries, supra*, 24 Cal.3d at p. 227.)

In considering the first factor we are mindful that "different felonies have different degrees of probative value on the issue of credibility. Some, such as perjury, are intimately connected with that issue; others, such as robbery and burglary, are somewhat less relevant; . . ." (*People* v. *Rollo, supra*, 20 Cal.3d at p. 118.) Here the prior conviction was for robbery, an offense only marginally relevant to the issue of appellant's credibility and thus entitled to somewhat less weight. (*People* v. *Fries, supra*, 24 Cal.3d at p. 229.) However, appellant's prior conviction for robbery was two years old at the time of trial and thus relatively recent. Under the rules of evidence, admission would be favored. (*Ibid.*)

On the other hand, the *Fries* court pointed out the substantial risk of undue prejudice whenever a prior conviction is admitted to impeach the credibility of the defendant.

"If a defendant testifies and is impeached by means of a prior felony conviction, there is a widely acknowledged danger that this evidence will be misused by the trier of fact. 'Despite limiting instructions, the

jury is likely to consider this evidence for the improper purpose of determining whether the accused is the type of person who would engage in criminal activity.' ... As the United States Supreme Court has noted in a related context, evidence of a 'defendant's prior trouble with the law ... is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.' [Citation.] This tendency to prejudge the issue of guilt denies an accused the presumption of innocence and lessens the burden of the prosecutor to prove guilt beyond a reasonable doubt.

"There is also the 'obvious danger' that the jury will decide that based on his prior convictions, the accused 'ought to be put away without too much concern with present guilt.' [Citation.] Further, the admission of prior convictions often confuses the issues at trial and 'draw[s] [the jurors'] minds away from the real issue' of guilt or innocence. [Citations.]" (24 Cal.3d at pp. 227-228.)

The court then stated that "[w]hile the risk of undue prejudice is substantial when any prior conviction is used to impeach the credibility of a defendant-witness, it is far greater when the prior conviction is similar or identical to the crime charged." (*People* v. *Fries, supra*, 24 Cal.3d at p. 230.) Consequently, the court found the admission of a prior robbery conviction error where the conviction was identical to the offense for which the defendant was on trial. (24 Cal.3d at p. 233.)

In the case at bench, the prior conviction was for the identical offense for which appellant was being tried. As the *Fries* court stated in its explanation of the court's reasoning in *People* v. *Rist, supra*, "If the probative value of the similar prior conviction is outweighed by the risk of undue prejudice, the similar prior conviction *must* be excluded. It is irrelevant that there may be no dissimilar prior convictions." (24 Cal.3d at p. 230; italics added.)

Finally, there is the consideration that where, as here, the defendant elected not to testify in order to keep the evidence of his prior conviction from the jury, the jury is deprived of the accused's testimony. "An accused's failure to testify may itself be misperceived by the jury, since 'his silence alone will prompt the jury to believe him guilty.' (*McCormick, supra*, § 43, p. 89.) The jury 'will expect the defendant to present all the evidence he can to escape conviction, and it will naturally infer that his failure to explain or deny evidence against him when the facts

are peculiarly within his knowledge arises from his inability to do so. "Such an inference is natural and irresistible. It will be drawn by honest jurymen, and no instruction will prevent it." [Citation.]' (*People v. Modesto* (1965) 62 Cal.2d 436, 452 [42 Cal.Rptr. 417, 398 P.2d 753].)" (*People v. Fries, supra,* 24 Cal.3d at pp. 228-229.)

In the case at bench, it appears that the trial judge's reason for permitting evidence of appellant's prior robbery conviction to be used for purposes of impeachment was that evidence of prior convictions of the prosecution's witness was introduced. The court stated that "John George was allowed to be impeached for his credibility on the basis of a prior, . . . I think the Court is just not going to give [appellant] the aura of credibility by allowing him to be here and persuading the jury." In entertaining a *Beagle* motion it is not the court's function to balance the credibility of witnesses against the credibility of the defendant; rather, it is the court's obligation to balance the probative value of the defendant's prior convictions on the issue of his truth and veracity against the prejudicial effect of introducing evidence of the prior conviction in the minds of the jurors. A prosecution witness does not run the risk of being found guilty on the basis of his prior offenses whereas a defendant-witness does. Accordingly, we find that the trial court abused its discretion in denying appellant's motion to exclude evidence of his prior conviction for robbery.

In *Fries* and *Spearman* the Supreme Court had no idea what the testimony of either defendant would have been, had either one chosen to testify. In both cases the court concluded that the trial court's improper ruling constituted reversible error. In the instant action, the records indicate that appellant testified in his first trial and the jury was unable to reach a verdict. The evidence is stronger here than in either *Fries* or *Spearman* that it is reasonably probable that a result more favorable to appellant would have been reached in the absence of error. (*People v. Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].)

The judgment is reversed.

Taylor, P. J., concurred.

**ROUSE, J.**—I respectfully dissent.

The case against the defendant was a very strong one. Charlotte Root, the victim of the rape and robbery, had ample opportunity to ob-

serve defendant at close range over a prolonged period of time as she accompanied him through the various rooms in her home. Lighting conditions were excellent—it was approximately 10:30 a.m. on a "[n]ormal, sunny morning." Mrs. Root testified that she made a special effort to concentrate on defendant's appearance and clothing, because she wanted to furnish the police with a good description of her assailant. She gave the police a detailed description of defendant: a black male, approximately 5 feet 10 inches tall, approximately 30 to 35 years old, wearing dark brown slacks, a dark red shirt and a tan buckskin or suede jacket with a rip in the shoulder seam.

Mrs. Root was first shown a book of several hundred photographs of black male individuals. Defendant's photograph was not in this book, and Mrs. Root made no identification of any of the photographs. Also, she made no identification when shown other groups of photographs which did not include defendant's photograph. However, when shown a group of photographs which *did* include defendant's photograph, she told the police that defendant looked "very, very much" like her assailant, although she could not be absolutely certain because defendant's hair look different in the photograph. She told the police that she was 80 percent to 85 percent certain that the person in the photographs (the defendant) was her assailant.

Mrs. Root then positively identified defendant at a physical lineup. She testified that she recognized him as soon as he walked in: "when he walked in my heart started to beat, and I knew right away that was the man." She said that there was no doubt in her mind.

Mrs. Root's husband, crippled as the result of a brain tumor, testified that he went into a state of shock when defendant entered his home, and was never able to positively identify defendant; however, he did state that defendant was the individual in the physical lineup who most closely resembled the robber.

Two watches taken in the robbery of the Root home were found in pawnshops under pawn slips signed by Otis Harris and Michael Jarvis. When Harris was contacted by the police, he stated that he had obtained the watch which he had pawned from John George. John George, in turn, told the police that he had obtained two watches from an individual known to him only as "George." Since John George did not know "George's" last name, he was shown various mugshots. He identified defendant as "George." John George told police that defen-

dant was staying with him in May 1977, and that, on the morning of May 24th, defendant left the house and later returned with the two watches and various other items. At that time, defendant was wearing a suede jacket, and John George, who had previously been employed at a cleaner's, stitched up a tear in the shoulder of the jacket when defendant returned that morning. John George testified that, later, he gave the two watches to Otis Harris and Michael Jarvis. John George then accompanied the two men to different pawnshops where the two watches were pawned. John George had retained the pawn slips and gave them to the police.

I agree that authorizing the use of defendant's prior robbery conviction for impeachment purposes, under the circumstances of this case, constituted error under existing law. However, in view of the victim's positive identification of defendant as her assailant and other corroborating evidence of his guilt, I must regard such error as harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].) I fear that, too often, we forget, or otherwise disregard, the mandate of article VI, section 13, of the California Constitution.[1]

In this instance, the trial judge ruled that if defendant elected to testify, then he would allow the validity of his testimony to be attacked by the prosecutor's use of a prior robbery conviction. The judge reasoned that to do otherwise would mislead the jury by creating an aura of credibility to which defendant was not entitled, especially since defense counsel had been allowed to attack the credibility of a key prosecution witness by the use of the latter's prior criminal record. Thus is repeated the unending saga of the trial judge's dilemma in ruling upon the use or nonuse of a defendant's prior conviction for impeachment purposes. True, guidelines have been formulated and set out in various decisions handed down from time to time, but, at the very least, they are confusing. It has been apparent for some time now that our high court has concluded that, no matter how thorough a judge's instructions regarding the limited effect in the use of an accused's record of prior conviction, the jury, nonetheless, is bound to be improperly influenced by its awareness of that conviction. I cannot disagree with such conclu-

---

[1]Article VI, section 13, California Constitution: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

sion. Unfortunately, many criminal convictions are being reversed because of this problem, and victims, such as Mrs. Root in this case, are required to relive the trauma of a rape or robbery, in a retrial of the case.

I suggest, therefore, that the time has come to cease "waffling" and confront the problem directly. Either we permit the unrestricted use of prior convictions or we disallow their use entirely for impeachment purposes. In the latter event, we eliminate the accused's reason for not testifying in his own behalf, if, otherwise, he chooses to do so. More properly, this is a task for the Legislature, not the courts.

For reasons earlier set forth, I would affirm the judgment.