[No. A025427. First Dist., Div. Four. June 27, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
YVONNE LINDO BROWN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Certified for publication except as to part III. (Cal. Rules of Court, rules 976(b) and 976.1.)

## COUNSEL

Patricia L. Watkins, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, P. J.**—Following a jury trial, Yvonne Lindo Brown (hereafter appellant) was found guilty of robbery in violation of Penal Code section 211[1] and sentenced to state prison for the midterm of three years.

On appeal appellant asserts: (1) the trial court erred in ruling that a prior robbery conviction (§ 211) was admissible for impeachment purposes; and (2) she was denied her constitutional right to effective assistance of counsel.

### I. THE FACTS

On January 13, 1983, at approximately 1:50 p.m., a young black woman robbed the South Airport Boulevard branch of Wells Fargo Bank. The robber waited in line for several minutes and then walked up to the merchant teller window where Ms. Chandra Gaston was working. She placed a large bag on the counter and ordered Ms. Gaston to "Fill it up. No funny stuff. Bottom drawer only. I'll kill you."

Ms. Gaston did as she was told and placed approximately $8,000 from the bottom drawer into the bag. She testified that she placed "bait money"

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

in the bag but it failed to activate, i.e., explode red dye, when the robber exited the bank and she forgot to pull the money clip which operates the bank's cameras in the event of a robbery.

The robber fled and jumped into a 1965-1967 two-door green getaway car driven by a black male in his mid-20's or early 30's. The car had been stolen that morning in San Francisco and was abandoned later that day.

Four eyewitnesses positively identified appellant, Yvonne Lindo Brown, as the bank robber. Gaston and Ruth Martinez, the bank's utility teller, both testified that they had observed the robber for approximately five minutes while she waited in line for Gaston's teller window. Gaston observed the robber close up for an additional 30 or 40 seconds during the commission of the robbery. Both witnesses gave the police detailed descriptions of the robber's facial features, height, weight and clothing immediately after the robbery. They assisted an artist in drawing several composite sketches and shortly thereafter selected appellant's picture from among six photographs in a police photo spread. At a live lineup held about two weeks after the robbery and in court at trial, both Martinez and Gaston positively identified appellant as the robber.

In addition, Debra Rogers, a teller at a nearby window, identified appellant as the robber in the police photo spread and in court at trial. Norman Lecointre's attention, while standing across the street from the bank, was directed to a speeding vehicle which came to an abrupt stop, picked up appellant and instantaneously sped away. He identified appellant in the photo spread and in court as the woman who jumped into the getaway car.

Appellant challenged the accuracy of the identifications by calling two witnesses who saw a black female in the bank but were unable to positively identify appellant as that woman in either the photo spread or in court. She also presented an alibi defense. Nevertheless, on the basis of the above testimony, she was found guilty of robbery (§ 211).

## II. ADMISSIBILITY OF A PRIOR FELONY CONVICTION

At trial appellant moved to bar impeachment with a prior robbery conviction (§ 211) should she elect to testify. ▮▮ ▮▮▮▮ Relying on the plain language of article I, section 28, subdivision (f) of the California

Constitution (Proposition 8),[2] the trial court stated that it had no discretion to exclude evidence of a prior conviction. The court denied the motion and as a result, appellant chose not to testify.

Appellant asserts that the trial court erred in ruling that the prior robbery conviction was admissible; she contends that even after the enactment of Proposition 8 the trial court retains its discretion under Evidence Code section 352 to exclude evidence of a prior conviction where the probative value of the evidence is substantially outweighed by its prejudicial effect. Respondent argues that article I, section 28, subdivision (f) of the California Constitution mandates the admission of *all* prior felony convictions and leaves no room for judicial discretion.

This issue has recently been addressed by the California Supreme Court in *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111]. Defendant Maria Castro was convicted by a jury of receiving stolen property (§ 496). Before trial, the court denied Castro's motion to bar impeachment with two then unspecified priors should she elect to testify on the ground that all prior felonies are admissible under article I, section 28, subdivision (f) of the California Constitution. Castro did testify at trial and both priors (possession of heroin and possession of heroin for sale) were used for impeachment purposes. (At pp. 305, 317.)

■ The *Castro* court set forth a two-part analysis for a trial court to follow in determining whether a prior felony is admissible for impeachment purposes. First, the trial court must determine whether the prior conviction involves "moral turpitude." If the court finds that it does not involve moral turpitude, then the prior may not be admitted. Second, if the prior does involve moral turpitude, then the court must exercise its discretion under Evidence Code section 352 in deciding whether to admit or exclude the prior. (*People* v. *Castro, supra,* at p. 316.)

Applying the above rules, the Supreme Court found that the trial court in *Castro* had committed two errors. First, the court found that possession of heroin for sale does involve moral turpitude as it involves the intent to

---

[2]Article I, section 28, subdivision (f) of the California Constitution provides in full: "'Use of Prior Convictions. Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court.'"

We note that the trial court was correct in using Proposition 8 as the measure of admissibility of appellant's prior conviction since the instant offense arose after the effective date (June 9, 1982) of article I, section 28, subdivision (f) of the California Constitution. (*People* v. *Smith* (1983) 34 Cal.3d 251, 262 [193 Cal.Rptr. 692, 667 P.2d 149].)

corrupt others whereas mere possession of heroin does not. (*People* v. *Castro, supra,* at p. 317.) Thus, the trial court erred in allowing the prosecution to impeach defendant's credibility with the simple possession charge. (Ibid.) Second, the court erred in stating that it had no discretion with respect to the admission of either of the priors. (*Ibid.*) However, applying the standard in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], the *Castro* court found that the errors were harmless. (*People* v. *Castro, supra,* at pp. 318-319.)

■ Applying the rule in *Castro* to the facts of the present case, we must first determine whether robbery, appellant's prior conviction, involves moral turpitude.

The Supreme Court gives us little guidance in ascertaining which crimes involve moral turpitude. We are told that crimes which reveal a defendant's dishonesty, "general readiness to do evil," "bad character" or moral depravity do involve moral turpitude. (*People* v. *Castro, supra,* at p. 315.) Furthermore, we know that possession of heroin does not involve moral turpitude whereas possession for sale does. (*Id.,* at p. 317.) Where does robbery fit on this scale of possession versus possession for sale?

First, we note that even under the more narrow standard of *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1] and its progeny requiring that a prior conviction involve *dishonesty,* robbery was admissible for impeachment purposes.[3] We logically infer that under the broader moral turpitude standard, robbery is necessarily admissible. (See *People* v. *Castro, supra,* 38 Cal.3d at p. 317, fn. 13.)

Secondly, we turn to the substantial body of law defining crimes involving moral turpitude which has developed in the area of attorney discipline. As early as 1940, the California Supreme Court in *In re Rothrock* (1940) 16 Cal.2d 449 [106 P.2d 907, 131 A.L.R. 226] recognized that robbery and moral turpitude are practically synonymous. The court stated: "In cases such as those involving convictions of murder, forgery, extortion, bribery, perjury, robbery, embezzlement and other forms of theft, no difficulty would attend the question of moral turpitude from a consideration of the record of conviction alone." (At p. 454.)

---

[3]In *People* v. *Rist* (1976) 16 Cal.3d 211, 219-220 [127 Cal.Rptr. 457, 545 P.2d 833] and *People* v. *Fries* (1979) 24 Cal.3d 222, 229 [155 Cal.Rptr. 194, 594 P.2d 19], the Supreme Court states that robbery is probative of honesty. However, applying the pre-Proposition 8 *Beagle* guidelines the courts ruled that the prior convictions should not have been admitted because, on the facts of each case, the probative value of the prior was outweighed by its prejudicial effect.

In *In re Fahey* (1973) 8 Cal.3d 842 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465], a proceeding to discipline an attorney, the court explained that conviction of certain crimes establishes moral turpitude on its face. (At p. 849.) The court need not look to the circumstances surrounding the offense because (1) those crimes necessarily involve the intent to defraud or intentional dishonesty for the purpose of personal gain; or (2) the crime, such as murder or a serious sexual offense, is so repugnant to accepted moral standards that it is clear that moral turpitude is involved. (*Ibid.*) Like theft (*In re Rothrock* (1944) 25 Cal.2d 588, 591 [154 P.2d 392]), receiving stolen property (*In re Plotner* (1971) 5 Cal.3d 714, 726 [97 Cal.Rptr. 193, 488 P.2d 385]) and extortion (*Barton v. State Bar* (1935) 2 Cal.2d 294, 297 [40 P.2d 502]), robbery involves intentional dishonesty for the purpose of personal gain. (See *In re Hallinan* (1954) 43 Cal.2d 243, 247-248 [272 P.2d 768].) Accordingly, we hold that robbery is one of those offenses where conviction alone compels the conclusion that moral turpitude was involved.

■ Since appellant's prior robbery conviction meets the threshold requirement of involving moral turpitude, it was within the discretionary power of the court to grant or deny appellant's motion in accordance with Evidence Code section 352. (*People v. Castro, supra,* 38 Cal.3d at p. 316.) The failure of the trial court, in the present case, to exercise its discretion was clearly error under *Castro.*[4]

■ We must now determine whether the trial court's error requires reversal. Under *People v. Watson, supra,* 46 Cal.2d 818, 837, reversal is permitted only if after a review of the entire record "the court is of the opinion 'that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'"

For the purpose of our harmless error analysis we will accept as true appellant's assertion that had the trial court exercised its discretion and ruled the prior conviction inadmissible, she would have testified.

We recognize that in cases arising prior to the enactment of Proposition 8, the Supreme Court had cast doubt upon the applicability of the usual harmless error standard of *People v. Watson, supra,* 46 Cal.2d at page 836, in cases where a defendant elected not to testify due to *Beagle*[5] error in the admission of a prior conviction. In *People v. Rist, supra,* 16 Cal.3d 211,

---

[4]Of course, in hindsight, it is easy to declare that the trial court's failure to exercise discretion was error but we note that the trial in this case was held nearly 16 months before the Supreme Court's decision in *Castro.* At the time of trial, the court's ruling was quite understandable in light of the language of subdivision (f). (See fn. 2, *supra.*)

[5]*People v. Beagle, supra,* 6 Cal.3d 441.

223, in attempting to calculate the prejudicial effect of the error, the court stated that "the usual tests for concluding that an error requires reversal of a judgment of conviction are not applicable." In *People* v. *Fries, supra,* 24 Cal.3d 222, 233-234, the court set forth what can best be characterized as a reverse *Watson* test: "Absent any basis for concluding that [appellant's] testimony would not have affected the result, 'the court is of the opinion that it is reasonably probable that a result more favorable to [appellant] would have been reached in the absence of this error.' " This test is much more demanding than *Watson* because it announces something akin to a rebuttable presumption of prejudice, i.e., unless the reviewing court can determine what the contents of the defendant's testimony would have been and that the jury would have been completely unswayed by it, reversal of the judgment is required.

In *People* v. *Spearman* (1979) 25 Cal.3d 107 [157 Cal.Rptr. 883, 599 P.2d 74], the court cited *Watson,* but again deviated somewhat from that standard stating, in essence, that although the case against the appellant was strong, it was not irrebuttable and the court "has no basis for concluding that appellant's testimony would not have affected the result of the trial." (At pp. 118-119.) The *Spearman* court states a nearly per se reversal rule— unless the incriminating evidence is "irrebuttable," i.e., the defendant could give no testimony which if believed would have resulted in acquittal or conviction of a lesser offense, reversal is automatic if a defendant is deprived of his right to testify because of Beagle error.

*The Castro* court labels *Rist, Fries* and *Spearman* as part of the "*Antick*[6] line of cases." (*People* v. *Castro, supra,* 38 Cal.3d at p. 308.) The court found that article I, section 28 of the California Constitution, which governs the admissibility of the prior in this case, was framed by the drafters and legislated by the voters in a direct attempt "to counter the effect of the *Antick* line of cases." (*Id.,* at pp. 308-309.) We therefore conclude that the voters intended to counter this rule of nearly per se reversal in cases where error results in a defendant's failure to exercise his right to testify.

This conclusion is supported by the *Castro* court itself which uses a "pure" *Watson* test in determining the prejudicial effect of the trial court's error. (*People* v. *Castro, supra,* 39 Cal.3d at p. 319.) Unlike the present case, the defendant in *Castro* did testify; however, the court makes no distinction between testifying and nontestifying defendants. Absent further guidance from the Supreme Court, we conclude that the effect of the error in the present case must be evaluated under the *Watson* standard.

A review of the record herein convinces us that the error which appellant alleges caused her to forego testifying was nonprejudicial since it

---

[6]*People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43].

is not reasonably probable that a result more favorable to appellant would have occurred in the absence of that error. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

The prosecution's case consisted of one positive eyewitness identification by the teller who was robbed, and that identification was strongly corroborated by the testimony of three other witnesses—two who saw appellant immediately before the robbery (Rogers and Martinez) and one who observed her immediately thereafter (Lecointre).

Defense counsel challenged the accuracy of the identifications by calling witnesses who were in the bank at the time of the robbery and who testified that they saw the robber but could not identify appellant as that robber. Appellant also presented an alibi defense. Lori Marshall, appellant's friend, testified that appellant was with her at Marshall's home watching soap operas from 11:35 a.m. until 3:30 or 4 p.m. on the day of the 1:50 p.m. robbery.

Thus, it cannot be said that appellant's testimony was essential to the presentation of her defense as other witnesses presented alibi and misidentification testimony.

As there was overwhelming direct and indirect evidence of appellant's guilt, we conclude that it is not reasonably probable that appellant's testimony would have affected the result of the trial. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836). Accordingly, we hold that the error complained of was nonprejudicial.

III.* EFFECTIVE ASSISTANCE OF COUNSEL

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment of conviction is affirmed.

Channell, J., and Sabraw, J., concurred.

---

*Part III of this opinion is not certified for publication. (See fn., *ante,* at p. 800.)